NEW SHARON WATER POWER COMPANY
*vs.*
THOMAS R. FLETCHER.

Franklin.    Opinion March 5, 1896.

*Lease.   Water.   Dam.   Rental.*

In an action for use of water drawn from plaintiff's dam by virtue of a written agreement or lease, it appeared that the instrument amounted to an agreement of certain mill-owners to give a company their dam so long as the company should maintain it in an improved condition only. The mill-owners agreed to pay the company the whole rental to be apportioned among them yearly according to the water each one should draw. No term was mentioned; and *it was held*; that the fair inference, therefore, is that it shall be from year to year, when each mill-owner is to pay for the proportion of water he shall have used. If one mill-owner shall have drawn no water he is still deprived of the use of his interest in the dam so long as it shall be maintained in the condition named. The other mill-owners may continue to receive their shares of water by paying the whole rental apportioned among them.

This construction comports with the respective rights of joint owners in a dam. When one ceases to use it, he cannot be compelled to contribute to its repair. That must be borne by the other owners. He loses the use of his property and they assume the costs of its maintenance.

AGREED STATEMENT.

This was an action of assumpsit upon the following account annexed to the writ:

"New Sharon, January 1, 1894.

"Thomas R. Fletcher:

To New Sharon Water Power Co., Dr.

"Balance due for rent and use of water from dam to
    January 1, 1893, as per contract,         . $199 79
"Rent and use of water power from January 1, 1893,
    to January 1, 1894, as per same contract,    138 89

            Due January 1, 1894.        $338 68"

There was also a special count in the declaration upon the agreement in writing, called lease or agreement, found below. The parties agreed upon the following facts :

"The dam was constructed by the company, and the mill-owners commenced to use the water from the bulkhead about the first of October, 1889. The mill-owners agreed among themselves to employ William Sewall and one Joseph Keith to measure and apportion the volume of water used by them respectively, who attended to that duty and reported to the mill-owners that the defendant was using 279 inches; William Croswell, 200 inches; Young & Hutchinson, 250 inches, and Nathaniel Harding, 150 inches. December 26, 1891, the defendant Fletcher paid the company on account his share for the water used, $136.39, and February 6, 1892, he paid on account $111.09, and took receipts therefor from the treasurer of said company. . . . Defendant has paid nothing more. January 8, 1891, the defendant's mill was burned. He made partial arrangements to rebuild, got out part of his lumber, but abandoned the purpose and the mill has not been rebuilt, and in the fall following the fire, the water was shut off by Mr. Harding and Mr. Hutchinson, by arrangement with Mr. Fletcher, to protect the mills below till the mill of defendant should be rebuilt or the flume repaired, and was not used by the defendant after that time. Mr. Fletcher died March 1, 1894. No complaint is made but that the company has sufficient water to meet the demands of the mill-owners and has always been ready to furnish the same. The full court is to render such decision as the law and facts require."

(Lease or Agreement.)

" This indenture — made this twenty-seventh day of March, A. D., 1889, between the New Sharon Water Power Company of the first part, and the present mill-owners at New Sharon village of the second part.                    Witnesseth :

"That the New Sharon Water Power Co., for the consideration hereinafter mentioned, doth covenant and agree to construct and maintain a dam and bulkhead across the Sandy river at New Sharon village, near by the mills now situated thereon, and to use all due care and diligence in keeping the same in good repair, and upon their failure or neglect to make necessary repairs on the same, the mill-owners shall have the right to make such repairs after giving the said Water Power Co. reasonable notice that such repairs are needed, and to deduct the cost of said repairs from rents due from them to said Water Power Co., and the said Water Power Co. doth demise and lease to said mill-owners the right to draw water as follows :

" The grist-mill to draw water in quantity sufficient for the purposes of the mill in supplying the demands of its patrons, not to exceed six hundred (600) square inches.

"The saw-mill to draw water in quantity sufficient for the purposes of the mill in supplying the demamds of its patrons, not to exceed the number of inches now drawn.

" One chair-factory to draw water in quantity sufficient for its own use, not to exceed the number of inches now drawn.

" Harding's mill to draw water in quantity sufficient to run the mill and business now connected with the wheels, not to exceed the number of inches now drawn.

" And the said mill-owners, T. R. Fletcher, Wm. Croswell, Young & Hutchinson and Nath'l Harding of the second part in consideration of the foregoing do hereby covenant and agree to lease of said Water Power Co. the right to draw and use water in manner and amount as aforesaid, and to pay for the same as follows : for the whole amount of water so drawn said mill-owners to pay the annual rental of five per cent on the cost of said dam and bulkhead not to exceed six [amended ' not to exceed seven '] thousand dollars, each separate mill-owner to

pay as his part of said sum, the same per centage as the number of inches drawn by his mill shall be of the whole number of inches drawn by the four mills. Said payment well and truly to be made at the office of the treasurer of said Water Power Co., at New Sharon, on the first day of January of each year.

"And said mill-owners do further covenant and agree that any other party leasing the right to draw surplus water of said Water Power Co., shall have the right to draw water from the flume by paying their proportional part of the expense of maintaining said flume.

"And in further consideration of the foregoing agreement, on the part of the said Water Power Co., the said several mill-owners do hereby bargain, sell and convey, and forever quit-claim to the said Water Power Co., all the rights and privileges in and to the old dam and its connections with the shores, together with the several rights to draw water in connection with said mills and as now held and conveyed to said mill-owners by deed.

"The conditions of this conveyance are such that should the said Water Power Co. neglect or refuse to well and truly perform the obligations of the foregoing contract of the first part, then this conveyance to be null and void, otherwise to remain in full force and effect.

"Said mill-owners further agree that in case at any time they shall neglect or refuse to pay the annual rental as aforesaid, then said Water Power Co. shall have the right to prevent such mill from drawing or using any water until said rent is paid." . . .

*E. O. Greenleaf*, for plaintiff.

Upon a covenant in a lease of a mill for years to pay rent, the rent may be recovered after a destruction of the mill by fire, although the lessor does not rebuild. *Fowler* v. *Bott*, 6 Mass. 63 ; *Hallett* v. *Wylie*, 3 Johns. 44 and cases.

Where a party, by his agreement voluntarily assumes or creates a duty, or charge upon himself, he should be bound by his contract, and the non-performance of it will not be excused by accident or inevitable necessity. *Adams* v. *Nichols*, 19 Pick. 276.

If the lessee desired an exception, he should have provided for it in his contract. *Phillips* v. *Stevens*, 16 Mass. 238.

This indenture between the parties was, in operation, a deed of this right to use water as settled in *Mill Dam Foundery* v. *Hovey*, 21 Pick. 431.

Counsel also cited : *Davis* v. *Alden*, 2 Gray, 313 ; *Kramer* v. *Cook*, 7 Gray, 553 ; *The Lehigh Zinc & Iron Co.* v. *Bamford*, 150 U. S., 665 ; *Warren* v. *Wagner*, 75 Ala. 188 (51 Am. Rep. 446) ; *Crocker* v. *Hill*, 61 N. H. 345 (60 Am. Rep. 322) ; 3 Kent Com. (12 Ed.) § 465 and notes ; Taylor L. & T. (7 Ed.) §§ 372, 373 ; 1 Wash. R. P. (4 Ed.) § 4, p. 505 ; *Sheets* v. *Selden*, 7 Wall. 424.

Not only was there no destruction of the subject matter of the lease, but the tenant has not shown that he surrendered or offered to surrender, the benefits thereunder. *Coogan* v. *Parker*, 16 Am. Rep. 659 (2 S. C. 255).

A tenant cannot abandoned his title and go out unless the surrender is accepted by his landlord. His right of possession remains the same. *Welcome* v. *Hess*, 25 Am. St. Rep. 145 & note (90 Cal. 507) ; also note to *Bowen* v. *Clarke*, 29 Am. St. Rep. 625 (22 Oregon 566).

If the tenant be not relieved from rent, after destruction of his landlord's property, a fortiori, he cannot obtain absolution, when the property destroyed is his own, and within his own control and option to rebuild.

*H. L. Whitcomb*, for defendant.

SITTING : PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, STROUT, JJ.

HASKELL, J.    The defendant and associates being the owners of a certain dam, inferentially insufficient for their use, conveyed the same to the plaintiff company on condition that the conveyance should be void if the plaintiff failed to rebuild and maintain the same according to its covenants so to do; and agreed to take the water at an annual rental of five per cent on the cost of the new dam, not to exceed seven thousand dollars,

each defendant to pay his proportional part of the same in January annually, measured by the proportion of water he shall have drawn during the year.

Defendant's mill burned in January, 1891, and since that date has taken no water, although he paid his rental until sometime after that. This suit is for rent in arrears.

The agreement provided that plaintiff might sell to other parties any surplus water in the flume on payment of their proportional part of the cost of maintaining the same. It also provided that if the mill-owners failed to pay the stipulated rent the water might be withheld in the meantime; that the grist-mill might draw not over six hundred square inches, the saw-mill, the chair-factory, and Harding's mill, sufficient for their purposes not exceeding "the number of inches now drawn."

When the agreement was made the dam had not been rebuilt, and although it contains the words "doth demise and lease to said mill-owners the right to draw water as follows," yet, there were no premises to be let, and the mill-owners do not accept the premises supposed to be granted, but "agree to lease" "the right to draw and use water" at an annual rental.

The instrument amounts to an agreement by the mill-owners to give the new company their dam so long as they shall maintain it in an improved condition only, and to pay the whole rental to be apportioned among them yearly according to the water each one shall have drawn. No term is mentioned, and the fair inference, therefore, is, that it shall be from year to year, when each mill-owner is to pay for the proportion of water he shall have used. If one mill-owner shall have drawn no water he is still deprived of the use of his interest in the dam so long as it shall be maintained in the condition named. The other mill-owners may continue to receive their shares of water by paying the whole rental apportioned among them. This construction is much more reasonable than it would be to hold each mill-owner liable for rent indefinitely after his use of the water had ceased, as in this case.

Moreover, it comports with their respective rights as joint owners in the old dam. If one ceased to use the dam, he could

not be compelled to contribute to its repair; meantime, the cost would be thrown upon the other owners. He would lose the use of his property and they would assume the cost of its maintenance.

The defendant's mill had burned and presumably could not be rebuilt and run at a profit, so that he had no further use for the water. It would be an extremely harsh construction to hold him for water rent indefinitely when he shall have received no water.

The terms of the agreement are not happily expressed and do not plainly meet contingencies that were not expected when it was written; its construction, therefore, must be that which is most reasonable, and will bear the least heavily on any one. This construction saves the dam company from loss so long as any mill owner continues to draw water, and, if none take water, then the dam company simply meets the chances of investment that it saw fit to assume. It was a joint undertaking that the mill-owners should assume the rental to be severally apportioned according to their respective necessities, and that the dam company should take the risk of their taking the water. If they take none, the dam company must lose its rental. If some part of them take water, they are burdened with the whole rental. On the whole, this is the most· equitable construction of which the agreement is susceptible.

The defendant has paid more than appears to be due for rental during the last year that he took water.

*Plaintiff nonsuit.*